2012 VT 20

# Jacqueline Parker v. Brian D. Parker

[45 A.3d 48]

No. 11-080

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed March 15, 2012

*Matthew J. Buckley,* Essex Junction, for Plaintiff-Appellant.

*Peter G. Anderson,* Stowe, for Defendant-Appellee.

¶ 1. **Reiber, C.J.** Mother appeals from a superior court, family division, judgment transferring physical parental rights and responsibilities to father. She contends that the court erred in concluding that her desire to relocate to Buffalo, New York satisfied the threshold requirement of changed circumstances and supported its decision to transfer physical parental rights and responsibilities to father. We remand the matter for additional findings.

¶ 2. Mother and father were married in 1992, and separated on November 1, 2008, as set forth in their voluntary agreement. A partial marital settlement agreement was later incorporated into a final order and decree, which issued on April 28, 2010. The court awarded mother sole physical parental rights and responsibilities of their three minor children. The parties shared legal rights and responsibilities. Father was awarded parent-child contact, which varied according to the children's schedules.

¶ 3. On August 30, 2010, mother filed two motions with the family court. First, she filed a motion to modify parental rights and responsibilities, seeking sole legal and physical parental rights and responsibilities for the two minor children — the third child was then eighteen years old. She stated that co-parenting was "no longer possible" due to communication problems and other issues. She also expressed a desire to relocate the children to Buffalo, New York and stated that she had put the marital home on the market. Second, mother filed a motion for relief from abuse on behalf of the parties' children, which was denied.

¶ 4. Father filed a cross-motion to modify parental rights and responsibilities. He argued that mother "intentionally and repeatedly engaged in an ongoing pattern of parental alienation," noted the numerous times that she had unnecessarily involved the police in the parties' visitation disagreements, and stated that she had communicated with father's new girlfriend in violation of the final divorce order. He asserted that mother engaged in a "perpetual pattern and practice of impeding, obstructing, frustrating and interfering with [father's] ability to take part in the lives of his children."

¶ 5. In a document titled a summary decision and amended final order for parental rights and responsibilities dated January 28, 2011, the court granted father's cross-motion, awarding sole physical rights and responsibilities to father and establishing a fifty-fifty parent-child contact schedule. The court's rationale noted that the parties' ability to communicate effectively with each other was "completely dysfunctional," although they were able to exercise legal parental rights and responsibilities in most areas. Religion was the sticking point, however, and the court found a change of circumstances based on the parties' disagreement about the children's church attendance. The court therefore assigned responsibility for the issue of religion to mother, and this issue is not on appeal.

¶ 6. As for physical parental rights and responsibilities, the family court stated:

> [T]here has been a sufficient showing, by [father], of material and unanticipated change of circumstances sufficient to warrant the court revisiting that issue. *The material change is [mother's] disclosure . . . that she would like to, or intends to move with the children to*

*Buffalo, NY* at the end of this school year, when presumably she will have also lost (to foreclosure) the former marital home in Morrisville. (It is also clear that [mother's] intentions are conditional, that is, she would only make the move IF the court were to 'allow' it by issuing the necessary order(s); if denied, she does not (at least presently) intend to move to Buffalo without the children . . . .).

(Emphasis added.)

¶ 7. The court then briefly addressed the children's best interests. After noting that the children's "relationship to father has been constant and multi-day *on a weekly basis*," the court concluded that a permanent move to Buffalo "is not in the children's best interest, and is so far in derogation of the obligation to promote and provide maximum parent-child contact under 15 V.S.A. § 665(b)(5), that it trumps [mother's] primary caretaker role, as well as other statutory factors that might otherwise trend in [mother's] favor." Emphasizing this point, the court explained: "Again, although [mother's] relocation proposal is conditional, the fact that she would make, and expound on it in her sworn testimony, is sufficient evidence of her present disinclination, if not inability to foster maximum parent-child contact to make the adverse finding under § 665(b)(5)." Based on this analysis, the court stated that it was "therefore compelled to assign sole physical parental rights and responsibilities to [father], just to ensure that [mother] does not attempt some unilateral move with the children in spite of the court's assessment."

¶ 8. The court concluded its decision by stating that "[a]ny party requesting further, or more detailed findings of fact, and/or conclusions of law, shall request the same, in writing, as set forth in [V.R.C.P.] 52(a)(1)."[1] If a party made such a request, the court indicated that the summary decision would become an interim

---

[1] Rule 52(a)(1) provides that:

In all actions tried upon the facts without a jury or with an advisory jury, the court shall, upon request of a party participating in the trial made on the record or in writing within 5 days after notice of the decision, or may upon its own initiative, find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58 . . . . The court may set a date subsequent to the close of the evidence by which requests for findings must be submitted.

temporary order, but continue to be "in full force and effect" unless further modified. Neither party requested additional findings or conclusions.

¶ 9. On appeal, mother emphasizes that she is not challenging the court's denial of her motion to modify or her request to move to Buffalo with the children, but rather only the court's transfer of physical parental rights and responsibilities to father. She argues that the court erred by arriving at its threshold finding of changed circumstances and its best-interests determination based solely on mother's conditional intent to relocate. She challenges the court's exclusive reliance on the fifth factor of § 665(b) to justify awarding father sole physical rights and responsibilities based on its conclusion that her declared intent to relocate with court approval demonstrated her unwillingness to foster a positive relationship with father. She asserts that, in doing so, the court erred not only by ignoring all of the other factors set forth in § 665(b), but, more importantly, by effectively ruling that a custodial parent's desire to relocate is, in and of itself, sufficient evidence of that parent's unwillingness to foster a positive relationship between the children and the noncustodial parent.

¶ 10. For his part, father argues that there was sufficient evidence provided at trial to support both the finding of changed circumstances and a transfer of physical parental rights and responsibilities to him. He contends that mother's contemplated move was only one aspect of the parties' problems, which included a breakdown in communication and mother's ongoing efforts to sabotage his relationship with the children. In addition, he argues that because mother failed to request findings pursuant to Rule 52, she is precluded from challenging the adequacy of any findings that the court made on its own initiative. According to father, the standard of review under such circumstances becomes whether there is support for the decision when the evidence is viewed in the light most favorable to the prevailing party.[2]

---

[2] The parties do not dispute that the Rules of Civil Procedure are applicable to this post-judgment divorce proceeding in family court. See V.R.F.P. 4(a)(1) (providing that the Rules of Civil Procedure "apply to actions for divorce, legal separation, and dissolution of a civil union" and that "[a] civil action for legal separation, dissolution of a civil union, parentage, desertion or nonsupport shall be considered an action of divorce for purposes of this rule"); see also V.R.C.P. 1 (providing that "[t]hese rules govern the procedure in the Civil and Criminal

■ ¶ 11. At the outset, we must determine whether the court made findings of fact because the answer to that question will guide our review. Rule 52 provides that the court "may upon its own initiative" make findings of fact. Although findings are generally "a formal, deliberate statement of a court's determination of facts" rather than "off-hand or casual statements," *Helm v. Helm*, 148 Vt. 336, 339, 534 A.2d 196, 198 (1987), we have considered remarks made by the trial court on its own initiative to be findings subject to our review to determine if they were adequate to support its decision. See *Maurer v. Maurer*, 2005 VT 26, ¶¶ 12-16, 178 Vt. 489, 872 A.2d 326 (mem.) (concluding that trial court's remarks were findings of fact and citing other cases in which trial court decisions have been reversed and remanded for further factfinding).

■ ¶ 12. In this case, at the time its latest decision was rendered, the family court was well aware of the history of conflict surrounding the parties' marriage and divorce. Perhaps because of this and the fact that neither party requested findings, the court's decision did not set forth separately numbered findings of fact and conclusions of law. Nonetheless, though the family court did not label its decision in terms of "findings of fact" or "conclusions of law," its reasoning therein is, in effect, a limited recitation of findings and conclusions. The court's statements cannot be considered "unguarded or conversational comments, expressly not intended to be final or dispositive," but rather were "expressly [] intended to be final [and] dispositive." *Helm*, 148 Vt. at 339, 534 A.2d at 198. Indeed, the court's decision notes that "any party requesting *further, or more detailed* findings of fact, and/or conclusions of law, shall request the same." (Emphasis added.) Such language suggests that the court made findings of fact, while at the same time acknowledging that the findings were not comprehensive.

■ ¶ 13. Because we view the court's decision as one where findings were made on its own initiative, those findings must support the decision. See *Maurer*, 2005 VT 26, ¶ 12; see also *Mayer v. Mayer*, 144 Vt. 214, 217, 475 A.2d 238, 240 (1984) (reversing and remanding custody award because court failed to explain why child was better off with one parent rather than

---

Divisions of the Superior Court and in the Judicial Bureau in all suits of a civil nature").

other); *Jensen v. Jensen*, 139 Vt. 551, 552-53, 433 A.2d 258, 259-60 (1981) (reversing and remanding custody award because court failed to identify facts supporting its decision to modify joint custody decree by giving one party full custody). The primary purpose of findings is to enable appellate review. *Mayer*, 144 Vt. at 216, 475 A.2d at 240. As a practical matter, in order to review a trial court decision, "the facts essential to the disposition of the case must be stated." *Id.* at 217, 475 A.2d at 240. If the findings are inadequate, we must remand for additional findings. Conversely, if the findings are adequate for review, we will not overturn them unless they are clearly erroneous. *Kasper v. Kasper*, 2007 VT 2, ¶ 5, 181 Vt. 562, 917 A.2d 463 (mem.). Where the decision "reflects . . . reasoned judgment in light of the record evidence," we will not disturb it. *Id.*

¶ 14. For instance, in *Maurer*, the trial court found that the parties had different parenting styles, which demonstrated an inability to share parental rights. 2005 VT 26, ¶ 5. The court found that a change of circumstances existed on that basis. *Id.* Turning to the best-interests analysis, the court stated that "somebody's got to make the decision, and you've got to consider the best interest of the child," noting that children benefit from exposure to different activities. *Id.* It concluded that "[n]ow mother can make the decisions" and issued an order transferring sole legal and physical rights and responsibilities to the mother. *Id.* On appeal, we reversed and held that the court's findings were inadequate for appellate review. *Id.* ¶ 12. We stated that where the court makes findings on its own initiative, those findings must be adequate to explain how the court arrived at its decision, and there, the findings were inadequate because the court did not explain why the mother should have been vested with sole decision-making authority. *Id.* ¶¶ 12-16.

¶ 15. Similarly, in this case, we are unable to fully discern the basis for the court's decision from its limited findings and conclusions. With regard to the threshold issue of whether there was a real, substantial, and unanticipated change in circumstances, the court found the material change to be mother's disclosure of her intent to relocate with the children. To the extent that the court's finding of changed circumstances followed automatically from mother's desire to relocate, the court erred.

¶ 16. Although relocation alone may be the basis for finding changed circumstances, it may not, in and of itself, "automatically

satisfy the threshold showing of changed circumstances." See *Hawkes v. Spence*, 2005 VT 57, ¶¶ 9-13, 178 Vt. 161, 878 A.2d 273 (noting that relocation alone is not per se change in circumstances and discussing factors to consider in determining whether relocation amounts to changed circumstances). Obviously, if actual relocation is not automatically a change of circumstances, then an expressed desire or a plan subject to court agreement to relocate cannot automatically be considered a change of circumstances, particularly when the parent seeking to relocate conditions the relocation upon maintaining parental rights and responsibilities.[3]

■ ¶ 17. In this case, however, both parties acknowledged the existence of changed circumstances — albeit for different reasons — and the court appears to have based its conclusions of the same on a connection between mother's desire to relocate and some of the other reasons presented by the parties. In discussing the children's best interests, the court concluded that mother's desire to move was "sufficient evidence of her present disinclination, if not inability to foster maximum parent-child contact" with father, thereby suggesting that its finding of changed circumstances was based on more than mother's desire to relocate. The decision, however, contains no findings to support this conclusion.

¶ 18. The court further concluded that it was "compelled" to award sole physical parental rights and responsibilities to father "just to ensure that [mother] does not attempt some unilateral move with the children in spite of the court's assessment." The court suggested that mother's past actions compelled this conclusion, but there are no findings on any such past actions. Father presented evidence of mother's alleged parental alienation, but, again, the court did not address this subject in its brief findings and conclusions. In short, the court's findings are insufficient to support the conclusions upon which the court relied in determining that there were changed circumstances that warranted revisiting the question of child custody.

■ ¶ 19. To the extent mother argues on appeal that the court erred by failing to discuss each of § 665's individual statutory factors in considering the parties' cross-motions to modify parental rights and responsibilities, we disagree. The plain language of

---

[3] This was, according to the court and without expressed doubt as to its credibility, mother's representation and position.

§ 665 requires that the court "consider," but not necessarily expound upon, each of the nine statutory factors. See *Sochin v. Sochin*, 2005 VT 36, ¶ 6, 178 Vt. 535, 872 A.2d 373 (mem.) ("As long as the court considers each factor, § 665(b) imposes no specific requirement on how this consideration is to be manifested in the court's findings and conclusions." (quotation omitted)). Upon consideration of all of the factors and its election to render findings, the court need only make findings on those factors that inform its decision. In this case, the current state of the court's findings and conclusions are not sufficient for us to understand the basis of its decision and to engage in informed appellate review, notwithstanding the deferential standard of review on appeal.

¶ 20. Although we remand the matter for more findings, we take no position at this time on the court's decision. We recognize that the court held two hearings with the parties in November 2010 and January 2011, and therefore had considerable information and opportunity to observe the parties and consider the facts. Moreover, our examination of the transcript of the custody hearing reveals abundant testimony by both mother and father on issues surrounding the breakdown of the parties' relationship, their inability to communicate, and the children's best interests generally. Thus, on remand, the trial court may in its discretion conclude that additional evidence is not required in order to make supplemental findings and may instead clarify its rationale, or even alter its decision if duly supported, on the basis of the existing transcript and case file.

*Remanded for further proceedings consistent with this opinion. The family division's January 28, 2011 order will remain in effect until a new order is issued.*