*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-383

MARCH TERM, 2014

| | |
|---|---|
| Isabella Oehry | } APPEALED FROM: |
| | } |
| | } Superior Court, Windsor Unit, |
| v. | } Family Division |
| | } |
| | } |
| Christopher Mangini | } DOCKET NO. 247-5-94 Wrdm |

Trial Judge: Katherine A. Hayes

In the above-entitled cause, the Clerk will enter:

Father appeals a decision by the family division of the superior court requiring him to pay mother $8,047 to retroactively equalize their respective payments for their daughter's college education. Father argues that: (1) the provision in the final divorce order addressing the payment of college expenses is merely aspirational and does not require the parties to evenly divide the college expenses; and (2) in any event, the court failed to make findings that support its award. We affirm.

The parties divorced in December 1994, when their daughter was a small child. The relevant provision of the final divorce order, which was based on the parties' stipulation, states as follows:

> The parties recognize the importance of providing for a college education for the minor child. These expenses will usually include tuition, room and board and incidentals. The parties shall share, to the extent possible, the costs of providing for a college education for the minor child. To the extent that money is not available to pay college costs, all efforts shall be made to provide all information necessary to complete loan and grant applications.

In May 2013, the parties' daughter graduated from the University of Vermont (UVM). Both parties had made contributions to a college education fund for their daughter. Approximately one month before their daughter's graduation, mother filed a motion to enforce the college-expenses provision of the divorce order, arguing that she had paid more than her share of their daughter's college expenses.

The trial court held a hearing on the motion in August 2013. Both parties appeared pro se, testified, and submitted exhibits. Four weeks after the hearing, the trial court issued a decision finding that the parties had agreed to each pay half of their daughter's college expenses and ordering father to pay mother $8,047 to equalize those payments.

Father retained counsel and appealed the trial court's decision to this Court. He first argues on appeal that the court committed reversible error by enforcing the merely aspirational language of the provision. According to father, the provision plainly did not obligate either party to pay half of their daughter's college expenses, or even half of the parental portion of those payments. In father's view, the provision merely states "that the parents will try, within the limits imposed by their respective means and financial obligations, to share equally in paying college expenses."

This argument reflects a marked departure from father's approach before the trial court. At the beginning of the motion hearing, the court stated that it would have to decide if the provision in question was enforceable, noting that it "sounds kind of like an aspiration, a goal, a plan, a hope that you both had, that you would each be able to contribute." Mother responded that when the parties worked out their 1994 stipulation they agreed to reduce father's child support obligation "based on the fact we both agreed that we would share the cost for her college equally." Rather than challenging mother's statement, father stated as follows: "Of allowable college expenses, I can document that I've paid more than twice what [mother] has paid for [daughter's] college." From then on, through the entire hearing, the parties essentially argued about what payments were allowable college expenses and who paid more for those college expenses. Specifically, the point of dispute centered on whether money mother obtained from the parties' college fund went to "allowable college expenses." Father argued that money mother paid for uninsured medical expenses, automobile insurance, and living expenses did not qualify as college expenses under the stipulation. Mother countered that husband had orally agreed to pay automobile expenses because of the tuition saved by their daughter not going to an-out-of-state school, and that the living expenses were for partial board and rent during her last two years of school after their daughter moved out of the student dormitory.

The court indicated at the close of the hearing that "it's possible" it would find the college-expenses provision unenforceable, but apparently the parties' approach at trial—arguing exclusively about who paid more college expenses—was the basis of the court's finding that "[b]oth parties agree that the plan was that each of them would pay one-half of [their daughter's] college expenses."

In light of the above history, we cannot conclude that father preserved the argument that the college-expense provision was "aspirational" and unenforceable. See Bull v. Pinkham Eng'g Assocs., 170 Vt. 450, 459 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."). Father never made any such argument at the motion hearing, and tried the case as if the only contested issue was whether he had, in fact, paid at least half of the college expenses. We need not resolve the meaning of the provision in question because father did not raise this argument at the hearing on mother's motion.

Moreover, father did not suggest, or present evidence to demonstrate, that he was not financially able to share equally in paying the college expenses. To the extent father argues on appeal that he paid his share "to the extent possible," that claim is unsupported by the evidence.

Next, father argues that the court committed reversible error by failing to provide a clear factual basis, in the form of calculations, to support its order requiring him to pay mother $8,047. We conclude in the context of the overall record that the court's findings are sufficient to support its judgment. Neither party requested findings, but because the court made limited findings on its own initiative, those findings must support the court's decision. See Parker v. Parker, 2012

VT 20, ¶¶ 12-13, 191 Vt. 222.  The court found, "[b]ased on the evidence," that mother paid $34,285, and father paid $18,191, of the $52,476 in allowable college expenses paid by parties. The court thus required father to pay half of the difference of what each parent paid—$8,047—to equalize the parties' contributions.  Responding to various arguments that had arisen during the course of the hearing, the court expressly found that costs associated with the daughter's study abroad would be counted as allowable college-related costs, but that automobile and uncovered insurance expenses would not be counted.

At the hearing, the parties agreed that exhibit one, a document produced by the UVM accounting office, is an accurate summary of all expenses and payments associated with their daughter's attendance at UVM.  Exhibit two is mother's summary of who paid which of the expenses documented in exhibit one.  Father disputed some of the expenses attributed to mother in exhibit two, and the court went over those expenses during the hearing.  The total allowable expenses paid by father, per exhibit two, amounted to $18,193—essentially what the trial court found father had paid.  Although the trial court did not specifically cite exhibit two, and mother's accompanying testimony, it is apparent from the record and course of the hearing that the trial court credited mother's evidence concerning father's contributions.

With respect to mother's contributions, exhibit two purports to show that mother paid $43,743.  After subtracting the automobile and medical expenses that the trial court expressly found were not within the scope of college expenses contemplated by the parties' stipulation, mother's remaining allowable expenses per exhibit two amount to $34,287—essentially what the trial court found mother had paid.  Again, although the trial court did not specifically cite exhibit two as the basis for its finding about mother's allowable expenses, it is apparent from the record that the court did credit mother's testimony and the figures reflected in this exhibit.

In short, the court's findings, although limited, allow us to discern the basis for its decision.  See Maurer v. Maurer, 2005 VT 26, ¶ 12, 178 Vt. 489 (mem.) (stating that purpose of findings is to enable appellate court to determine how trial court reached its decision).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

3